**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 99-0699-RSWL-3 |
| ) | |
|                 Plaintiff, ) | |
| ) | **ORDER re: Defendant's** |
|    v. ) | **Petition for Writ of** |
| ) | **Coram Nobis; Motion to** |
| ) | **Vacate Judgment &** |
| FELIPE GARCIA, ) | **Sentencing (All Writs** |
| ) | **Act 28 U.S.C. § 1651(a))** |
| ) | [95] |
|     Petitioner/Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

Currently before the Court is Defendant Felipe Garcia's ("Defendant") Petition for Writ of Coram Nobis ("Petition" or "Petition for Writ of Coram Nobis") [95]. Having reviewed all papers submitted pertaining to this Petition, the Court **NOW FINDS AND RULES AS FOLLOWS:** Defendant's Petition for Writ of Coram Nobis [95] is **DENIED.**

///

///

# I. BACKGROUND

On January 13, 2000, Defendant pled guilty, pursuant to a plea agreement, to one count of conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b). Gov't's Resp. to Def.'s Pet. for Writ of Coram Nobis ("Opp'n") Ex. A, ECF No. 102-1. Defendant was involved in a scheme to fraudulently use account information as "access devices" to obtain over $130,000 from unauthorized ATM withdrawals. See id. at ¶ 7. At the time of his change-of-plea hearing, on January 13, 2000 [44], Defendant was a lawful permanent resident of the United States since moving here in 1974. See Def.'s Pet. for Writ of Coram Nobis ("Pet.") Ex. 1 (permanent resident card), ECF No. 95-1. On May 1, 2000, the Court sentenced Defendant to a five-year probation term. See Opp'n Ex. A. He was jointly and severally liable with his co-conspirators and ordered to pay part of restitution totaling $131,981.36. Id. at 3:7-11.

Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 (a)(43)(M)(i), Defendant's crime constituted an "aggravated felony" because it involved "fraud or deceit" and the victims' loss exceeded $10,000. Defendant's aggravated felony subjects him to deportation from this country under 8 U.S.C. § 1227(a)(2)(A)(iii). In 2014, Defendant applied for but was not eligible for naturalization due to his aggravated felony conviction. Pet. 3:15-18. On

June 29, 2016, Defendant was served with an I-261 "Additional Charges of Inadmissibility/Deportability" document, advising him that he was subject to deportation for being an aggravated felon who committed an offense involving fraud or deceit with a loss to the victim exceeding $10,000.  Id. at Ex. 6.  His Hearing in Removal Proceedings is set for December 14, 2018. Id. at Ex. 2.

On March 22, 2017, Defendant filed a Petition for Writ of Coram Nobis, asking the Court to vacate his May 2000 conviction because Anthony Eaglin, the Deputy Federal Public Defender that represented him during the criminal proceedings, did not advise him of the immigration consequences associated with his guilty plea to the section 1029(b) aggravated felony offense. The Government filed its Opposition on June 12, 2017 [102], pursuant to the Court's revised briefing schedule [101].  Defendant filed his Reply on June 30, 2017. [103].

## II. DISCUSSION

**A.** **Legal Standard**

1. <u>Writ of Coram Nobis</u>

Under the All Writs Act, a federal court may grant writs such as coram nobis.  See 28 U.S.C. § 1651(a).

A writ of coram nobis is an "extraordinary writ." Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002).  A writ of coram nobis provides a remedy when a petitioner has served his sentence.  Estate of

1  McKinney By & Through McKinney v. United States, 71

2  F.3d 779, 781 (9th Cir. 1995).  In order to show that a

3  claim warrants coram nobis relief, a defendant must

4  establish that (1) a more usual relief is not

5  available; (2) valid reasons exist for not attacking

6  the conviction earlier; (3) adverse consequences exist

7  from the conviction sufficient to satisfy the "case or

8  controversy" requirement under Article III; and (4) the

9  error is of a fundamental character.  Id. at 760.  It

10 is a defendant's burden of proof to satisfy each

11 requirement, and failure to meet any one of the four

12 requirements is fatal to a petition.  United States v.

13 McClelland, 941 F.2d 999, 1002 (9th Cir. 1991); Klein

14 v. United States, 880 F.2d 250, 253 (10th Cir. 1989).

15 A writ of coram nobis is reserved for errors that are

16 of "the most fundamental character, such that the

17 proceeding itself is rendered invalid," permitting a

18 court to vacate its judgment.  Mckinney, 71 F.3d at 781

19 (internal quotation marks and citations omitted).

20      The Supreme Court has noted the rarity in which a

21 writ of coram nobis is an appropriate form of relief:

22 "'it is difficult to conceive of a situation in a

23 federal criminal case today where [a writ of coram

24 nobis] would be necessary or appropriate.'"  Carlisle

25 v. United States, 517 U.S. 416, 429 (1996)(quoting

26 United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

27 ///

28 ///

4

**B.   Analysis**

    1.   <u>A More Usual Relief is not Available and</u>

        <u>Adverse Consequences Exist from the Conviction</u>

A defendant can show that a "more usual remedy is not available" to him if he is no longer in custody and thus is "not eligible for habeas relief or § 2255 relief." <u>United States v. Kwan</u>, 407 F.3d 1005, 1012 (9th Cir. 2005). Defendant was subject to only a five-year probation term and thus is no longer in custody and cannot seek habeas or § 2255 relief. Opp'n 3:8-11. Moreover, the possibility of deportation has been held as an "adverse consequence" flowing from a conviction that satisfies Article III's "case or controversy" requirement. <u>Kwan</u>, 407 F.3d at 1014; <u>Park v. California</u>, 202 F.3d 1146, 1148 (9th Cir. 2000) ("Because he faces deportation, [Defendant] suffers actual consequences from his conviction").

In any event, the Government concedes that Defendant satisfies the first and third requirements for a petition for writ of coram nobis—that a more usual relief is not available and adverse consequences exist from the conviction. Opp'n 5:26-6:5. Thus, Defendant has demonstrated that the first and third factors warrant granting the Petition.

    2.   <u>A Valid Reason Exists for not Attacking the</u>

        <u>Conviction Earlier</u>

The Government argues that it is not clear from the record if Defendant learned that the conviction would

subject him to deportation when he applied for naturalization in 2014 or when he received the Notice of Additional Charges of Inadmissibility/Deportability in June 2016. Opp'n 7:3-4, 22-26. In either scenario, Defendant has set forth valid reasons for waiting until March 2017 to attack the conviction.

Although a petition for writ of coram nobis does not have an applicable statute of limitations, a defendant should provide "valid or sound reasons" as to why they previously did not attack their conviction and exercise "due diligence" in seeking the writ. United States v. Indelicato, No. CR-85-0078-EMC, 2015 WL5138565, at *2 (N.D. Cal. Sept. 1, 2015)(citing Kwan, 407 F.3d at 1012). Courts have denied coram nobis relief where (1) "the petitioner has delayed for no reason whatsoever; (2) where the respondent demonstrates prejudice; or (3) where the petitioner appears to be abusing the writ." Kwan, 407 F.3d at 1013. Here, the Government has not argued prejudice. And Defendant is not abusing the writ, as attorneys in 2000 were not obligated to advise their clients of deportation consequences stemming from plea agreements, and the deportation consequences did not become clear until he was out of custody and the only avenue for relief was a petition for writ of coram nobis. But the Court struggles with whether Defendant "delayed for no reason whatsoever." Id.

A delayed failure to learn of a conviction's

deportation consequences is sometimes a "valid reason" to permit a writ.  <u>United States v. Koertel</u>, No. 2:13-cr-00346-KJM, 2016 WL 4524860, at *3 (E.D. Cal. Aug. 30, 2016)("The Ninth Circuit has held that a petitioner fulfills the . . . [valid reason] requirement where the writ was filed once he was aware that deportation will occur as a result of his conviction"); <u>Kwan</u>, 407 F.3d at 1014.  But if a petitioner unduly delays between learning of adverse deportation consequences and filing a petition for writ of coram nobis, he may not satisfy the second requirement.  <u>United States v. Guillen-Reyes</u>, CR No. 89MJ1132, 2009 WL 3061985, at *3 (S.D. Cal. Sept. 24, 2009)(finding petitioner did not show valid reasons for not attacking conviction earlier when he learned that the Immigration and Naturalization Service ["INS"] denied his replacement amnesty card and he waited four years before filing his writ but offered no explanation as to the delay).

Defendant states in his declaration that he "learned most clearly" his aggravated felony would subject him to deportation in June 2016 when he received his aggravated felony charges.  Pet. Ex. 4, at 1.  This is bolstered by a declaration from Jerry Rulsky, Defendant's attorney representing him in the immigration proceedings.  Mr. Rulsky states that Defendant's previous August 2015 Notice to Appear was withdrawn because it improperly characterized his INA

charges; thus, he was "in limbo as to the true nature of the specific violation" until June 2016.  Id. Ex. 5, at ¶ 3, ECF No. 95-5.  If this is true, the less than one-year delay in filing the Petition in March 2017 would not necessarily be unreasonable.  Rocha v. United States, Nos. CR 02-582 CBM, CV 12-3797 CBM, 2015 WL 92945, at *2 (C.D. Cal. Jan. 7, 2015)(petitioner satisfied "valid reason" factor where he waited less than one year between learning he could be subject to deportation when applying for naturalization and filing the writ).  On the other hand, Defendant may have known of his aggravated felon status as early as 2014, but he delayed three years in filing the Petition.  Pet. Ex. 4, at 2; Garcia v. United States, No. CR 97-022 MEJ, 2012 WL 5389908, at *6 (N.D. Cal. Nov. 5, 2012)(chastising petitioner for waiting even fifteen months to file a writ, as his explanation that his attorney needed time to prepare a small file and interview the previous immigration attorney was not a valid reason).

Here, Defendant may have a valid reason in failing to timely challenge his conviction, as he was "unaware of the immigration consequences of his guilty plea" until at least 2014, fourteen years after the conviction.  United States v. Hubenig, No. 6:03-mj-040, 2010 WL 2650625, at *3 (E.D. Cal. July 1, 2010).  And while the record suggests that Defendant may have been aware of his possible deportation as early as 2014,

when he applied for naturalization, both Defendant's
declaration and the Rulsky Declaration suggest that it
was not crystal clear that his aggravated felony would
subject him to deportation until June 2016.  Even
though the record is relatively silent as to why
Defendant delayed nine months in filing the instant
Petition, the delay of less than a year is not as
egregious as in other cases; accordingly, Defendant has
established valid reasons for his delay in challenging
the 2000 conviction.

   3.   <u>Defendant has not Shown the Error is of a</u>
        <u>Fundamental Character</u>

     The granting of a writ of coram nobis is such a
rarity, that it is reserved for legal or factual errors
"in those cases where the errors [are] of the most
fundamental character, that is, [rendering] the
proceeding itself invalid." <u>Hirabayashi v. United</u>
<u>States</u>, 828 F.2d 591, 604 (9th Cir. 1987)(quoting
<u>United States v. Mayer</u>, 235 U.S. 55, 69 (1914)).

     An ineffective assistance of counsel claim can be
an error "of the most fundamental character," as it
"deni[es] a fundamental constitutional right." <u>United</u>
<u>States v. Risquez</u>, No. 84-CR-0254-JM, 2012 WL 3069323,
at *2 (S.D. Cal. July 27, 2012); <u>see</u> <u>also</u> <u>United States</u>
<u>v. Mett</u>, 65 F.3d 1531, 1534 (9th Cir. 1995).

     To make a showing of ineffective assistance of
counsel, a defendant must (1) "show that counsel's
representation fell below an objective standard of

1  reasonableness;" and (2) the deficient performance

2  prejudiced the defendant.  <u>Strickland v. Washington</u>,

3  466 U.S. 668, 687–88 (1984).

4              a.   *Whether Counsel's Representation was*

5                   *Objectively Reasonable*

6       In the context of advising a client regarding

7  immigration consequences stemming from a conviction,

8  the Supreme Court now holds that an attorney "must

9  inform her client whether his plea carries a risk of

10 deportation," and failure to do so constitutes

11 ineffective assistance of counsel.  <u>Padilla v.

12 Kentucky</u>, 559 U.S. 356, 374 (2010).  This holding

13 extends not just to affirmative mis-advice, but also

14 obligates an attorney to not omit advice regarding

15 deportation consequences.  <u>See</u> <u>id.</u> at 371.

16      However, the Government argues that because

17 Defendant's plea took place ten years before <u>Padilla</u>,

18 he cannot argue that his attorney acted without

19 objective reasonableness by failing to advise him of

20 his plea's deportation consequences.  Opp'n 8:11-14;

21 <u>Velazquez v. United States</u>, 651 F. App'x 620, 622 (9th

22 Cir. 2016)(unpublished memorandum opinion)("Because

23 Velazquez's guilty plea occurred before the Supreme

24 Court decided [<u>Padilla</u>] . . . an allegation that his

25 counsel merely 'failed to advise him' about the

26 immigration consequences of his plea is insufficient to

27 satisfy <u>Strickland</u>'s first prong").  The Court agrees.

28 The Supreme Court has held that its ruling in <u>Padilla</u>

does not apply retroactively; thus, "defendants whose convictions became final prior to <u>Padilla</u> therefore cannot benefit from its holding."  <u>Chaidez v. United States</u>, 568 U.S. 342, 358 (2013).  Because Defendant was convicted in 2000, before <u>Padilla</u>, he must show that counsel affirmatively misrepresented immigration consequences to him.  <u>United States v. Chan</u>, 792 F.3d 1151, 1154 (9th Cir. 2015).

The record does not make clear whether Mr. Eaglin made any affirmative misrepresentations to Defendant, whether by guaranteeing him he would not be deported, by alluding to actions the INS might take against him, or otherwise.  In a declaration, Mr. Eaglin states that he barely remembers Defendant's case, but neither he nor the Government discussed Defendant's "aggravated felon[]" status and its applicable "immigration consequences."  Pet. Ex. 3, at ¶¶ 3, 10, ECF No. 95-3. This only shows a purported failure to advise Defendant of immigration consequences, which is not required for a pre-<u>Padilla</u> conviction like Defendant's.  <u>United States v. Cuoto</u>, 311 F.3d 179, 187 (2d Cir. 2002)("We have held that an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness").  As the Government notes, the only evidence that Defendant may have been misled is circumstantial.  The fact that he would not have filed for naturalization had he known of his aggravated felon

status only creates the *inference* that he was affirmatively misadvised. Opp'n 8:24-9:1. But it is equally plausible that Defendant's ignorance was borne out of his attorney's omissions of the immigration consequences, and said omission does not satisfy the first <u>Strickland</u> prong for a pre-<u>Padilla</u> conviction.

<u>United States v. Zhu</u>, No. CR 03-0348 WHA, 2016 WL 729525, at *2 (N.D. Cal. Feb. 24, 2016) is factually interchangeable with this case, and thus bolsters the Court's conclusion that Mr. Eaglin did not provide objectively unreasonable conduct. In that case, as here, the petitioner pled guilty to conspiring to possess access device-making equipment, 18 U.S.C. § 1029(b)(2), and was thus an aggravated felon per 8 U.S.C. § 1101(a)(43)(M), as he committed a fraud crime where the restitution amount exceeded $10,000. <u>Id.</u> at *1. And like here, the petitioner argued that his attorney did not explain his guilty plea's immigration consequences. <u>Id.</u> The nearly-identical factual similarities continue, as in <u>Zhu</u>, the previous defense counsel remembered nothing from the case and neither party could furnish a transcript of the plea hearing, which had been destroyed.[1] Having before it only the petitioner's self-serving declaration as to conversations with his attorney, the court was

---

[1] The Government lacks a transcript from the sentencing and the change-of-plea hearings. Opp'n 2:25-26. Because the matter is more than ten years old, the United States District Court, Court Reporting Services lack the original notes. <u>Id.</u> at 3:2-5.

12

unpersuaded that the declaration could "overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" Id. at *2 (citing Strickland, 466 U.S. at 689). Moreover, the petitioner's only evidence of an affirmative misrepresentation was a slightly more specific than here, but nonetheless self-serving, declaration that his attorney stated—that if he got probation and was never arrested for a new crime—his "chances for being deported were very low." Id. This was not sufficiently an "affirmative misrepresentation" in response to petitioner's inquiry about the immigration consequences. Id. at *3.

Here, as in Zhu, the plea agreement itself and the related hearing similarly do not shed light on whether Mr. Eaglin affirmatively misinformed Defendant, as the Government lacks a record of the plea hearing. Opp'n 9:8-9. However, the plea agreement does show that the Court was satisfied that Defendant's plea was "knowing and voluntary." Id. at 9:10-11 (citing Opp'n Ex. 1). Defendant's arguments that defense counsel knew he was a Mexican citizen and that Mr. Eaglin should have referred him to an immigration specialist are more appropriate under the Padilla regime where the attorney is obligated to seek out and share immigration consequences with his client, and Defendant cites no authority requiring defense counsel to seek advice from an immigration attorney in such circumstances.

13

1    Here, Defendant's declaration is even less specific

2  than the declaration in Zhu as to the statements Mr.

3  Eaglin made; allegedly, Defendant inquired whether he

4  would be deported and Mr. Eaglin told Defendant he

5  would not be deported.  Pet. Ex. 4, at 1.  By contrast,

6  Mr. Eaglin states in his declaration that generally, he

7  would note all significant discussions with his client,

8  but there is no apparent notation of this conversation.

9  Pet. Ex. 3, at ¶ 4.  Beyond this, the Court has little

10 else to assure itself that Defendant's self-serving

11 declaration is credible.  Permitting such a declaration

12 to carry the day for an ineffective-assistance-of-

13 counsel analysis would allow virtually any defendant to

14 retroactively claim that his attorney told him he would

15 not be deported.  Because a Defendant's self-serving

16 declarations that challenge his conviction are

17 typically insufficient to dismantle a conviction, as

18 this would invite "judicial chaos" in challenging most

19 convictions, the Court gives minimal weight to

20 Defendant's declaration.  Sanchez Rubio v. Lewis, 108

21 F.3d 339 (9th Cir. 1997)(unpublished memorandum

22 opinion)(citing Cuppett v. Duckworth, 8 F.3d 1132, 1139

23 (7th Cir. 1993)).

24     Overall, Defendant cannot demonstrate that his

25 attorney's conduct fell below the standard of objective

26 reasonableness.

27 ///

28 ///

1          b.  *Whether the Deficient Performance*
2              *Prejudiced Defendant*

3      "To satisfy the prejudice prong, a petitioner must
4 demonstrate that 'there is a reasonable probability
5 that, but for counsel's unprofessional errors, the
6 result of the proceeding would have been different.'"
7 United States v. Rodriguez-Vega, 797 F.3d 781, 788 (9th
8 Cir. 2015)(citing Strickland, 466 U.S. at 694).
9 Defendant argues that had he known that he was pleading
10 guilty to an aggravated felony, he would have discussed
11 amending or re-negotiating the plea agreement with Mr.
12 Eaglin to plead to a theft offense with a less-than-one
13 year term of incarceration[2] or opted, as a last resort,
14 to go to trial.  Pet. 7:16-27.

15      Defendant does not convincingly show the
16 feasibility of alternatively pleading to a theft
17 offense with a less-than-one-year incarceration term.
18 Defendant argues that he has "every confidence that the
19 prosecutor would have [allowed him] to modify the plea
20 agreement to allow him to plead guilty to a theft
21 felony . . . and perhaps [would have] recommend[ed] a
22 prison sentence less than a year" to avoid the
23 aggravated felon status.  Id. at 16:17-24.

24      To show that it was probable that he would have
25 been able to negotiate a better plea, the petitioner

26

27      [2] Only theft offenses with an imprisonment term of at least
28 one year are considered aggravated felonies.  8 U.S.C. § 1101
(a)(43)(G).

15

should point to cases where the government was clearly
willing in cases with similar crimes to permit the
petitioner to "plead guilty to a non-removable
offense." Rodriguez-Vega, 797 F.3d at 788. Defendant
has provided no cases showing the government's
willingness to convert a section 1029(b) fraud offense
to a theft offense with a short prison sentence. In
United States v. Swaby, 855 F.3d 233, 242 (4th Cir.
2017), petitioner's attorney requested, and the
government accepted, several changes that would avoid
the petitioner's deportation: (1) permitting pleading
to a different charge; (2) reducing the sentence to 364
days; (3) and removing fraud and deception language
from the factual stipulation. The government's
"acquiescence" bolstered the reasonable likelihood that
petitioner could have negotiated "a plea agreement that
avoided categorical deportation." Id. But in Swaby,
the petitioner was guilty of trafficking in
counterfeited goods, a wholly different statute from
section 1029(b) with its own scheme. And beyond
Defendant's bald assertion that he is confident the
prosecution would have been flexible, unlike Swaby, the
record does not show that his prior counsel had the
same history of successfully making concessions with
the Government that would render the likelihood of
negotiating a new plea plausible. What's more,
Defendant has attached a declaration from his
immigration attorney, but Mr. Rulsky offers no insight

1  into the feasibility or mechanics of a potential theft
2  offense claim on these facts.

3      Moreover, Defendant fails to show prejudice by
4  generally claiming that he would have even gone to
5  trial as a last resort to avoid deportation.  As the
6  Government argues, it is speculative and unrealistic
7  that Defendant could have found a different plea that
8  dually satisfied the facts at hand and would not have
9  led to automatic deportation.  Opp'n 10:1-4; <u>Haddad v.
10 United States</u>, 486 F. App'x 517, 521 (6th Cir.
11 2012)(statement that petitioner "would have gone to
12 trial" had he known that pleading guilty would make him
13 deportable is "not enough to establish prejudice"
14 particularly where his hypothetical new defenses were
15 unlikely to be successful and the evidence against him
16 at the time of conviction was strong).

17      Nevertheless, non-citizens facing the threat of
18 deportation may find other ways to show that they
19 reasonably would have gone to trial rather than pled to
20 a crime virtually guaranteeing deportation.  <u>Rodriguez-
21 Vega</u>, 797 F.3d at 789.  This is more so the case where
22 the petitioner "place[s] a particular emphasis on
23 preserving her ability to remain in the United States"
24 and has "significant family[] ties" here.  <u>Id.</u> at 790.

25      Defendant brings the Court's attention to a recent
26 Supreme Court case, <u>Lee v. United States</u>, 137 S. Ct.
27 1958 (2017), where the court explained that other
28 courts should not disturb a plea "solely because of

*post hoc* assertions from a defendant about how he would

have pleaded" absent his attorney's misrepresentations.

Id. at 1967.  Instead, courts can consider

"contemporaneous evidence to substantiate a defendant's

expressed preferences."  Id.  In Lee, the government

did not dispute that deportation was determinative in

Lee's acceptance of the plea deal; Lee repeatedly

pressed his attorney for reassurance regarding the risk

of deportation; and at the time of his plea, he

admitted he did not "understand" when the judge asked

him how the possibility of deportation would affect his

decision, and he subsequently physically turned to his

attorney for advice during the hearing.  Id. at 1968.

Lee's unique personal circumstances also showed his

express preference to avoid deportation.  At the time

of his plea agreement, he had lived in the United

States for three decades, owned two businesses, was the

only available family member to take care of his aging

parents, and had no intent to return to South Korea.

Id.

     Unlike Rodriguez-Vega and Lee, the facts here do

not as clearly show that Defendant opted for his plea

exclusively because of his immigration-related

concerns.  Defendant generally avers that he was

concerned about his immigration status because of his

clean criminal record and his young family, but Mr.

Eaglin does not corroborate that the entire pleading

strategy was crafted around Defendant's priority to not

get deported.  <u>See</u> <u>generally</u> Pet. Ex. 3; <u>Swaby</u>, 855
F.3d at 242(petitioner had a "single-minded focus in
structuring the plea agreement to avoid immigration
consequences").  Here, Defendant's declaration provides
that he allegedly immigrated legally to the United
States at age 5, has never been in trouble with the law
previously, and his parents, siblings, wife, and
children are either United States citizens or lawful
permanent residents.  Def.'s Reply re Writ of Coram
Nobis 4:19-5:10.  Although he had been living in the
United States for twenty-five years at the time of his
plea agreement, he does not show ties to the United
States like business contacts, nor does he show how the
burden of caring for his extended family falls squarely
on him.

While Defendant does allege varying degrees of
personal circumstances, his allegations seemingly try
to bring him in step with petitioners like <u>Lee</u>, but do
not necessarily leave the Court with the overwhelming
conviction that Defendant is any different from
defendants that provide "*post hoc* assertions as to how
they would plead."  <u>Lee</u>, 137 S. Ct. at 1367.  Moreover,
the Court agrees with the sentiment expressed in <u>Premo</u>
<u>v. Moore</u>, 562 U.S. 115, 132 (2011):

> Hindsight and second guesses are also
> inappropriate . . . where a plea has been
> entered without a full trial . . . [t]he plea
> process brings to the criminal justice system a
> stability and a certainty that must not be
> undermined by the prospect of collateral
> challenges . . . in cases where witnesses and

1     evidence were not presented in the first place.

2     Defendant cannot show that he would not have

3 accepted the plea agreement but for Mr. Eaglin's

4 deficient performance.  Because Defendant cannot prove

5 his ineffective-assistance-of-counsel claim, the fourth

6 factor under a petition for writ of coram nobis fails.[3]

7               **III.  CONCLUSION**

8     For the foregoing reasons, the Court **DENIES**

9 Defendant's Petition for Writ of Coram Nobis [95].

10 **IT IS SO ORDERED.**

11

12 DATED: August 24, 2017       <u>s/</u> RONALD S.W. LEW

13                             **HONORABLE RONALD S.W. LEW**
                            Senior U.S. District Judge

14

15

16

17

---

18     [3] Although Defendant does not outright request an

19 evidentiary hearing, he notes that he is prepared to testify regarding his ties to the United States and his familial

20 obligations.  Pet. 13:20-24.  The Court notes that having an evidentiary hearing would be unnecessary as the allegations, even

21 if accepted as true, do not render Defendant's ineffective-assistance-of-counsel claim successful.  <u>See</u> <u>United States v.</u>

22 <u>Leonti</u>, 326 F.3d 1111, 1116 (9th Cir. 2003).  Defendant cannot substantiate his broad allegations that Mr. Eaglin did not inform

23 him of the immigration consequences and that he would not have pled guilty to the section 1029(b) offense or would have gone to

24 trial, and he also does not suggest that his testimony or evidence at a potential hearing would depart from his

25 declaration.  <u>Indelicato</u>, 2015 WL 5138565, at *5; <u>United States</u>

26 <u>v. Cervini</u>, 379 F.3d 987, 994 (10th Cir. 2004)("[D]istrict courts are not required to hold evidentiary hearings in collateral

27 attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim").  The Court thus

28 **DENIES** any requested evidentiary hearing.